JOHN HENSHAW, PLAINTIFF, v. JOHN R. MILLER, EXECUTOR OF CHARLES E. MILLER, DECEASED.

Where an action on the case was brought in Virginia, against a person to recover damages for fraudulently recommending a third party as worthy of credit, whereby loss was incurred; and after issue joined upon the plea of not guilty, the defendant died, the action did not survive against the executor, but abated.
The Virginia laws and cases examined.

THIS case came up from the circuit court of the United States for the eastern district of Virginia, on a certificate of division in opinion between the judges thereof.

Henshaw was a citizen of Massachusetts, and brought an action on the case against Charles E. Miller, in his lifetime, for fraudulently recommending one Robinson as worthy of credit, in consequence of which the plaintiff had incurred considerable loss. After issue joined upon the plea of not guilty, Miller died, and on motion of the plaintiff a *scire facias* was issued for the purpose of reviving the suit against John R. Miller, his executor.

Upon the return of the *scire facias*, the executor moved to quash it, when the judges were divided in opinion whether the

action survived against the executor, or abated; and the question was certified to this court.

It was submitted, upon printed arguments, by *Mr. Heath*, for the plaintiff, and by *Mr. Lyons* and *Mr. Stannard*, for the defendant.

*Mr. Heath*, for the plaintiff, made the following points : —

For the plaintiff, Henshaw, it is insisted : That, under the law of Virginia, an action upon the case founded upon a tort by which the estate of the plaintiff was diminished or damaged, may be revived against the defendant's personal representative. That in Virginia, if the form of the action be trespass, or trespass upon the case, and if the loss or damage be merely pecuniary in its nature, and the remedy sought, being pecuniary, is entirely adequate, then the cause of action survives for or against the personal representative.

For the common-law doctrine, as modified by the statute 4, Edward III. ch. 7; Hambly *v*. Trott, 1 Cow. 375; Wheatley *v*. Lane, 1 Saund. 216, a; 1 Wms. Ex'ors, 668.

For the state of the law in Virginia on this point: See 1st vol. Rev. Code, 1819, 390, § 64; Supplement to Rev. Code, 1819, 258, ch. 196 ; Monroe *v*. Webb's Ex'ors, 4 Munford, 73 ; Lee *v*. Cooke's Ex'or, Gilmer, 331; Code of 1850, 544, § 20.

The common-law maxim, *actio personalis moritur cum persona*, unmodified by any statute, would undoubtedly apply to this case. But that rule was so manifestly unjust and unreasonable in its general application, that its operation has been constantly narrowed by statutory regulation, aided by liberal judicial construction in favor of right, until it is at this day almost reduced within bounds where reason and convenience would sutain it.

It was first confined by judicial interpretation to actions *ex delicto*, where the action sounded merely in damages. It was afterwards still further restricted by the statute 4 Edward III. ch. 7, *de bonis asportatis*, which was extended by a wise and liberal construction to all cases supposed to come within the reason, though not within the words of the rule. So that this statute has been construed to extend to " any injury to personal property, whereby it has been rendered less beneficial to the executor, whatever the form of the action may be." Note (1) Wheatley *v*. Lane, 1 Saund. 217 ; 1 Wms. on Ex'ors, 668.

Under this construction of that statute, in England, the case under consideration would survive to the executor. That statute is not in force in Virginia, but the enactment contained 1 Rev. Code, 1819, § 64, 390, is founded upon it, and has been con-

strued in the same equitable manner, to effect justice, by the courts of Virginia. The case of Monroe *v.* Webb's Ex'ors, 4 Munf. 73, was an action upon the case against the clerk of a court, for indorsing credits on an execution, to the injury of the plaintiff. It is true that case went off on other grounds, but it was not questioned by the court that the action would lie against the executor; and the conclusion is irresistible, that it was admitted on all hands that the cause of action survived. So, pursuing the same equitable construction, in Lee *v.* Cooke's Ex'or, Gilmer's Virginia R. 331, it was held, that § 64, ch. 104, 1 Rev. Code, 1819, is an extension of 4th Edw. III. ch. 7, *de bonis asportatis,* and that trespass for the mesne profits of land, recovered in ejectment against A., lies against his executor.

These authorities show the spirit in which the court of Appeals of Virginia are disposed to construe that remedial statute: that it has been decided to give it an equitable construction, so as to extend it to cases coming within the mischief intended to be prevented. Such is the case at bar. And it is insisted, that as the law was before the Code of 1850, which rules this case, the case at bar would have survived against the executor of the defendant. But the course of legislation, as well as of judicial construction, has been constantly to narrow the application of this technical maxim, *Actio personalis,* &c., and the act of the Virginia Assembly, ch. 131, § 20, 544, Code 1850, cuts it up by the roots, in all actions in respect of property or estate, real and personal, wherever the action is for a pecuniary or property injury, as contradistinguished from a personal injury, which can never be adequately compensated in damages. That enactment is as follows: " An action of trespass, or trespass on the case, may be maintained by or against a personal representative, for the taking or carrying away any goods, or for the waste or destruction of, or damage to, any estate of, by his decedent." Code, 1850, 544, § 20. This act is founded upon, and is an extension of the English statute, 3 and 4 Wm. IV. ch. 42, § 2, which, among other things, enacts: " That an action of trespass, or trespass on the case, as the case may be, may be maintained against the executor or administrator of any person deceased, for any wrong committed by him in his lifetime to another, in respect of his property, real or personal."

The case at bar is one where, by the wrongful act of the defendant, the plaintiff was damaged in his personal estate to the amount of $3,000. If he was entitled to compensation out of the estate of the defendant when alive, why is he not entitled to compensation out of the same estate in the hands of the defendant's executor? What principle of reason, convenience,

or justice would be violated by affording such a remedy? The statute of Virginia just cited, plainly intended to afford such a remedy. The case at bar comes within the very letter of the statute. But even if the construction were doubtful, surely the court would adopt that view which so manifestly is essential to enable the court to do justice between these parties. The case of United States *v.* Daniel, 6 How. 11, has no direct application; that being a question under the laws of North Carolina. But the reasoning of that decision is in furtherance of the view here taken.

The following note of the argument for the defendant is taken from the brief of *Mr. Stannard.*

On behalf of the defendant, the court is referred to 1 Wm. Saund. 217 (*a*), note (1), to show that in England, not only at common law, but even under the liberal construction given by their courts to statute 4 Edw. 3, ch. 7, such a case as the present would fall fully within the influence of the maxim *Actio personalis moritur cum persona;* for it is there expressly laid down "that the statute of Edw. 3 does not extend to injuries done to the person or to the freehold of the testator, therefore an executor or administrator shall not have an action of assault and battery, false imprisonment, slander, deceit, diverting a watercourse, obstructing lights, cutting trees, and other actions of the like kind, for such causes of action shall die with the person." And in the United States *v.* Daniel, 6 How. 13, this court expressly holds, that: " No action where the plea must be that the testator was not guilty, can lie at common law against the executor. Upon the face of the record the action arises *ex delicto,* and all private criminal injuries or wrongs, as well as all public crimes, are buried with the offender." It will, it is supposed, scarcely be contended, in the face of these authorities, that this action survived against the executor at common law.

Neither, it is submitted, is there any thing in the statute law of Virginia changing the rule of the common law in this respect. The only statutes in force, relating to this subject, at the institution of this suit will be found in the Revised Code of 1819, vol. 1, 390, § 64, and the Supplement to Revised Code, 258, ch. 196; and these statutes continued in force till the revisal of 1849, when they were substituted in the present Code of Virginia, (which took effect on the 1st July, 1850,) by the 20th section of chapter 130. See Code of Va., 544, § 20.

The first of the above-cited statutes provides, that actions of trespass for goods taken or carried away in the lifetime of the testator or intestate, may be maintained against, as well as by executors, &c.; and in that respect it extends the provisions of the

statute of 4 Edw. III. which gives a remedy only to executors, and not against them. But, in other respects, its language is much less comprehensive than that of the English statute, as was remarked by Judge Green, in the case of Thweatt *v.* Jones, 1 Rand, 331, where he says that : " Our statute, without any such title or general words as are found in the title and in the enacting clause of the English statute, gives the action of trespass for goods taken or carried away, and provides for that case only substantively, and not by way of example." And therefore that eminent jurist doubted whether the statute in question was susceptible of the broad and liberal construction which had been given by the English courts to the statute of 4 Edw. III. It was probably to remove the doubt thus expressed by such high authority, that shortly after the report of the case Thweatt *v.* Jones, decided in 1823, namely, on 9th March, 1827, the second of the above-cited acts was passed. Supp't R. C. 258, ch. 196. That statute provides : " That if any person shall commit a trespass, either by injuring or destroying the slaves or other personal property of another, &c., the action shall survive," and thus establishes by legislative enactment the same rule which prevailed in England, by judicial construction, under the common law, as modified the statute of 4 Edw. III. ch. 7. It certainly did not establish a more liberal rule, unless some distinction can be drawn between the words " personal property " and " personal estate." Under the statute law of Virginia, then, as it stood at the institution of this suit, it is submitted that the case at bar falls fully within the influence of Lord Mansfield's judgment, in Hambly *v.* Trott, Cow. 372, recognized and acted on by this court in United States *v.* Daniel, above cited.

It only remains then to inquire whether the 20th section of the 130th chapter of the Code of Virginia, 544, § 20, which took effect pending this suit, has made any change in the law affecting the question under consideration, supposing for the present, for the sake of the argument, that that 20th section rules this case. A very slight examination of that section will, it is submitted, be sufficient to show it was designed to have, and can have, no such effect, even in a case to which it is clearly applicable. It was compiled from the Virginia acts of 1819 and 1827, above cited ; and the English statute of 3 and 4 Will. IV. ch. 42, § 2, (see Eng. Statutes at Large, vol. 13, p. 141,) and was designed to extend the remedies given to and against executors to cases of injury or damage to real as well as to personal estate, which former were not embraced either by 4 Edw. III. in England, or by the Virginia statute, as will appear from Harris *v.* Crenshaw, 3 Rand. 14, in which it was held that " An action

of trespass *quare clausum fregit*, is not converted into an action *de bonis asportatis*, by an allegation in the declaration that the trees cut were carried away, and therefore the rule *actio personalis moritur cum persona* applies to such an action." But it was never designed by the 20th section of Code of 1850, to abolish all distinction between personal torts and injuries and damage to property or estate, whether real or personal, between actions *ex delicto* and actions *ex contractu*, or to provide that because, in some sense, a man may be said to be injured or damaged in his estate or means of livelihood by an assault and battery or by slanderous words spoken, therefore actions of assault and battery, or actions of slander, shall survive for or against an executor or administrator. Upon this point, also, it is submitted the case of the United States *v.* Daniel is a direct authority for the statute of North Carolina, relied upon to sustain the action in that case, 1 Rev. Stat. N. C. ch. 2, § 10, expressly provided, among other things, that "no action of trespass in the case, &c., brought to recover damages done to property, real or personal, should abate by death," &c.; and yet this court held that the statute above cited did not affect the question presented and passed upon in that case. Neither, it is submitted, does the 20th section of 130th chapter of the Code of Virginia affect the question arising in this case, unless the term "estate," used in the one statute, can be distinguished from the terms "property, real or personal," employed in the other.

It will be insisted, therefore, on behalf of the defendant, that this court should certify to the circuit court that this action, in the form in which it is prosecuted, does not survive against the executor of the defendant.

Mr. Justice DANIEL delivered the opinion of the court.

This case is brought before this court upon a certificate of division in opinion between the judges of the circuit court of the United States for the eastern district of Virginia.

The facts of this case, and the question of law arising thereon, upon which the judges were divided, are shown in the following statement:—

John Henshaw, the plaintiff in the circuit court, instituted in that court an action on the case against Charles E. Miller, to recover of him damages for fraudulently recommending to the plaintiff, by letter, one Porter Robinson as a person worthy of confidence, and thereby inducing the plaintiff to make sale on credit to the said Robinson of a considerable amount of merchandise, when the defendant knew that Robinson was unworthy of credit, and intended fraudulently to deceive the plaintiff,

who, in fact, had been deceived by the recommendation given by the defendant to Robinson, and upon the faith thereof had made sales to him, the whole amount whereof had been lost. In this case, after issue joined upon the plea of not guilty, and after several attempts at a trial of the cause, rendered fruitless by disagreement amongst the jury, the defendant departed this life, and on the motion of the plaintiff a writ of *scire facias* was awarded him to revive the suit against John R. Miller, the executor of the original defendant.

Upon the return of the *scire facias* executed, the executor moved the court to quash the process. This motion was continued until the May term of the court, 1853, when, upon the argument of the motion to quash the *scire facias*, the question occurred whether the action survived against the executor of the original defendant, or abated by the death of the latter; and opinions of the judges being opposed on this question, at the request of the counsel for the defendant it was ordered, that the division be certified to the supreme court at its next session.

In considering the question presented by the certificate of division in the circuit court, we must adopt for our guidance the following principle, namely, that this question is to be determined by the rule of the common law with respect to the revival of suits, except so far as that rule has been modified, either by restriction or enlargement, by the statutory provisions of the Virginia laws.

To the principle just mentioned we are bound to adhere, for the following causes : —

By an ordinance of the Virginia convention, passed on the 3d of July, 1776, it was declared : " That the common law of England, all statutes or acts of parliament made in aid of the common law prior to the fourth year of the reign of James I., and which are of a general nature and not local to that kingdom, together with the several acts of the general assembly of this colony now in force, so far as the same may consist with the several ordinances, declarations, and resolutions of the general convention, shall be the rule of decision, and shall be in full force until the same shall be altered by the legislative power of his colony."

At a subsequent period, namely, on the 27th of December, 1792, the legislature of Virginia, by an act of that date, after reciting the ordinance above mentioned, declared and enacted as follows, namely : " Sec. 2. That whereas the good people of this commonwealth may be ensnared by an ignorance of acts of parliament, which have never been published in any collection of the laws, and it hath been thought advisable by the general assembly during their present session, specially to enact

such of the said statutes as to them appear worthy of adoption, and do not already make a part of the public code of the laws of Virginia." " Sec. 3. Be it therefore enacted by the general assembly of Virginia, that so much of the above-recited ordinance as relates to any statute or act of parliament shall be and the same is hereby repealed; and that no such statute or act of parliament shall have any force or authority within this commonwealth." These provisions are followed by savings with respect to rights arising under any of the above-mentioned statutes, and as to any crimes committed against them before this repeal, and also of the benefit of all writs, remedial or judicial, which might have been legally obtained or sued out of any court, or the clerk's office of any court, of the commonwealth, prior to the commencement of the statute.

These two enactments have been continued in force, and will be found to be reënacted in the revisal of 1819, vol. 1, chapters 38 and 40.

The statutes, therefore, of 4 Edw. III. ch. 7, or of 3 and 4 Will. IV., or any other English statute as such, cannot govern this case, nor in anywise influence its decision, except so far as by parity the courts of Virginia may have applied the interpretation of those statutes by the English courts to similar provisions, if such there be, in the laws of Virginia.

The maxim of the common law is "*actio personalis moritur cum persona*," and as this maxim is recognized both in England and in Virginia, the interpretation of it in the former country becomes pertinent to its exposition or application here. In England it has been expounded to exclude all *torts* when the action is in form *ex delicto*, for the recovery of damages, and the plea not guilty. That in case of injury to the person, whether by assault, battery, false imprisonment, slander, or otherwise, if either party who received or committed the injury die, no action can be supported either by or against the executors or other personal representatives. 1 Saund. 217, n. 1; 2 M. and. Sel. 408. And so express and strict have been the applications of this maxim of the common law by the English judges, as to have established the rule, that for the breach of a promise to marry, although the action is in form *ex contractu*, yet the cause of action being in its nature personal, the executor of the party to whom the promise was made cannot sue.

And again, that for the breach of the implied promise of an attorney to investigate the title to a freehold estate, the executor of the purchaser cannot sue without stating that the testator had sustained some actual damage. *Vide* 4 Moore, 532; 2 B. and B. 102, and 2 M. and Sel., before mentioned. This has been ruled even under the alleged relaxation of the common-

law maxim in virtue of the statutes of 4 Edw. III. cap. 7, and 3 and 4 Will. IV. cap. 42. By the English courts it has been also ruled, that although the statutes which have conferred upon executors the right to maintain actions in certain cases arising *ex delicto*, do not limit that right to instances of a literal asportation of the goods or assets, yet they confer the right of action upon the executor in instances solely of actual injury to personal property, whereby that property has been rendered less beneficial to the executor. 2 M. and Sel. 416.

Let us see how far the common-law maxim has been modified in Virginia, either by express statutory language or by judicial construction.

By the 38th section of chapter 128, vol. 1 of the Revised Code of 1819, it is provided : " That where any personal action or suit in equity is now or shall be depending in any court of this Commonwealth, and either of the parties shall die before verdict rendered or final decree be had, such action or suit shall not abate, if the same were originally maintainable by or against an executor or administrator, but the plaintiff; or if he be dead, his executor or administrator, or the sheriff, sergeant, or other curator of the decedent's estate, shall have a *scire facias* against the defendant; or if he be dead, against his executor, administrator, sheriff, sergeant, or other curator of his estate, to show cause generally, why such action or suit shall not be proceeded in to a final judgment or decree."

This section of the statute provides merely against the abatement of actions at law or of suits in equity by the death of parties, as a matter of course, but it gives no further description of actions or suits than by reference to such designation of them and their capacity for revival as may be deducible either from the common law or by some statutory regulation.

By the 64th section of chapter 104, vol. 1, 390, of the same code, it is declared : " That actions of trespass may be maintained by or against executors or administrators, for any goods taken or carried away in the lifetime of the testator or intestate, and that the damages recovered shall be in the one case for the benefit of the estate, and in the other out of the assets."

This provision of the Virginia statute, in so far as it authorizes an action against the personal representative as well as in his favor, is unquestionably an extension of the statute of Edward III., which confers the right of action upon the executor or administrator, but does not authorize an action against him. But, although the former statute is certainly an extension of the latter, with respect to the parties for or against whom the right of action is given, it has been doubted, and upon very high authority upon the point, whether with respect to the class of

subjects to which the right of action is authorized, the statute of Virginia does not operate a material restriction upon the provision of the English statute. The statute of Edward III. is thus entitled: " Executors shall have an action of trespass for a wrong done to the testator," and reciting " that in times past executors have not had actions for a trespass done to their testators, as of goods and chattels carried away in their life, and so such trespasses have hitherto remained unpunished." It is enacted, that the executors in such cases shall have an action against the trespassers, and recover their damages in like manner as they whose executors they be should have had if they were in life."

In the interpretation of this statute, the courts in England have ruled, that the right conferred on the executor to maintain trespass for a wrong done to the testator, must, with reference to the language of the times when the statute was passed, signify any wrong; and that the instance put, namely: " as of the goods and chattels of the same testators carried away in their life," was put in the statute only as an instance or illustration, and by way of limiting the right to injuries to personal property, and not as restrictive to the single or particular form of injury; and that the statute must be construed to extend to every description of injury to personal property by which it has been rendered less beneficial to the executor, so that the executor may support trespass or trover, case for a false return to final process, and case or debt for an escape. Ld. Raym. 973.

The provision of the statute of Virginia by which the right of action by or against the personal representative as to torts is conferred, is introduced by no preamble or declaration by which any object or purpose beyond its literal terms may be implied. It is a simple section of the statute concerning wills, intestacy, and distribution, and clearly defines the single instance in which trespass may be maintained by the personal representative; the instance of " goods taken or carried away in the lifetime of the testator or intestate; " no other species of trespass or wrong is enumerated or alluded to. *Vide* 1 Rev. Co. of 1819, § 64, 390.

In reference to this section, and in comparing it with the statute 4 Edw. III., it has been remarked by Green, Justice, in the supreme court of Virginia, that in the construction of the latter statute, " it has been decided that the word trespass, as it was then understood, embraced all cases of tort; that the word wrong in the title is general, and that the words ' as of the goods,' &c., were inserted only by way of example, so as to confine the remedy to cases in which the wrong affected the goods and chattels. But our statute, without any such title or general words as are found in the title and in the enacting clause of

19 *

the English statute, gives the action of trespass for goods taken and carried away, and provides for that case only substantively, and not by way of example. *Vide* Thweatt's Administrator v. Jones's Administrator, 1 Randolph, 331."

But this 64th section would seem to have received a more explicit and definitive interpretation by the decision of the supreme court of Virginia in the case of Harris v. Crenshaw, reported in the 3d of Randolph, 14. That was an action of trespass *quare clausum fregit*, in which there was a verdict and judgment in favor of the defendant who died, and whose representative was made a party by consent. The case was carried by appeal as is the practice in Virginia, at law as well as in equity, to the supreme court by the plaintiff, upon exceptions taken to instructions from the judge at *nisi prius*. In delivering the opinion of the court, Tucker, President, says: " This is nothing more than an ordinary action of trespass *quare clausum fregit*. The allegation that the trees were cut and carried away, is always inserted in the declaration when it is intended to be proved. It did not convert the action into an action of trespass *de bonis asportatis*, and take it out of the rule *actio personalis, &c.* If the defendant had died before verdict, the writ would have abated, and the plaintiff would have been deprived of damages if he had sustained any. But there being a verdict and judgment against him, by which he may be hereafter affected in some other controversy respecting the premises, he has a right to reverse that judgment if he can, and was entitled to a. *scire facias* against the personal representative of the appellee." Then in commenting upon the exceptions to the instructions from the judge at *nisi prius*, the court proceeds thus: " The second instruction of the judge was therefore erroneous, and the judgment is to be reversed and the verdict set aside; and as by the death of the appellee the appeal abated here, and there can be no prosecution of the suit in the court below, it coming within the rule before stated, that is to say, the rule of the common law, *actio personalis, &c.*, it is to be abated here, and the proceedings certified to the court below."

By this decision of the supreme court of Virginia, the following positions must be taken as having been affirmed: —

1. That by the rule of the common law the right of action founded upon torts of any and every description terminated with the life of either participant in such tort. That this maxim or rule of the common law governed all causes of action arising *ex delicto* in Virginia, except so far as it may have been modified by statute.

2. That the provision of the statute of Virginia, authorizing actions for or against executors and administrators, for torts

done or suffered by those whom they represent, limits those actions to instances which are essentially or rather directly cases of trespass *de bonis asportatis,* and cannot be made to embrace ordinary cases of trespass *quare clausum fregit,* or cases of tort generally, by attempting to connect with them as an incident the asportation of goods and chattels; much less can it be made to cover an indirect or consequential injury to the welfare or prosperity of a testator or intestate resulting from a fraud practised upon him.

There is one case from the supreme court of Virginia, cited by plaintiff, and relied on to sustain the right of action in the executor. It is the case of Lee *v.* Cooke's Executor, reported in Gilmer, 331. This was an action for mesne profits of land which had been recovered in ejectment. After issue made up in the cause, the defendant died. At a subsequent term of the court the executors appeared by attorney, and the cause was continued. At the term next ensuing, the cause was directed to be struck off the docket, the court thinking that the action abated by the death of the defendant.

This decision was reversed by the supreme court, the latter tribunal being of the opinion that the case was within the equity of the 64th section of the Virginia statute, cap. 104, 1 Rev. Co. 390, and that the action, so far at least as regarded the mesne profits, did not die with the testator. The case is very succinctly given in the report, and is accompanied with no argument showing explicitly the grounds on which it was contested. It may have been regarded by the supreme court as resting upon an implied obligation or assumption to pay or account for profits ascertained by the judgment in ejectment to belong to the plaintiff, and therefore, as partaking essentially of the character of a contract. Or, if in any sense the right of action could be understood as arising from the asportation by the defendant, it must be by such an acceptation of the phrase as will apply it to the mesne profits specifically, as being personal property belonging to the plaintiff, and actually injured by the testator of the defendant in his lifetime. If more than this is sought to be deduced from the case of Lee *v.* Cooke's Executor, the attempt would bring the case in conflict with that of Harris *v.* Crenshaw, and with the opinion of Green, Justice, in the case of Thweatt's Administrator *v.* Jones's Administrator, both more recent in point of time, as well as more explicit in their interpretation alike of the English statute and that of Virginia.

In cases analogous to the one before us, or which rather must be viewed as identical in their essential features, the principles hereinbefore deduced from the laws and decisions of Virginia have been directly affirmed. Thus, in the case of Coker *v.*

Crozier, in the 5th vol. of Alabama Rep. 369, it was ruled, that in an action on the case for a fraud committed in the exchange of horses, upon the death of the defendant the suit could not be revived against his personal representative, the rule of the common law forbidding such revival, and there being no statute of the State to authorize it.

The case of Read et al. v. Hatch, from the 19th vol. of Pickering's Rep. 47, bears a still stronger resemblance to the case before us than does that just cited from the supreme court of Alabama. So exact, indeed, is this resemblance, that it might with justice be said, of the case of Read v. Hatch, in comparison with this under our consideration, *mutato nomine historia narratur de te.* The former was an action for fraudulently recommending a trader as in good credit, by means whereof the plaintiff was induced to sell him goods on credit, and thereby sustained damage. This action was founded on the 7th section of the 93d chapter of the Revised Statutes of Massachusetts, which provides that actions of trespass and trespass on the case for damage done to real or personal estate shall survive. Pending the suit the defendant died, and the plaintiff moved to cite in his administrator. Shaw, Chief Justice, said, in pronouncing the judgment of the court: "The question whether the plaintiffs can cite in an administrator, and proceed with their action, depends on Revised Stats. ch. 93, § 7. It is contended that a false representation, by which one is induced to part with his property by a sale on credit to an insolvent person, by means of which he is in danger of losing it, is a damage done to him in respect to his personal property. But we are of opinion that this would be a forced construction. If this were the true construction, then every injury by which one should be subjected to pecuniary loss would, directly or indirectly, be a damage to his personal property. But we are of opinion that it must have a more limited construction, and be confined to damage done to some specific personal estate of which one may be the owner. A mere fraud or cheat by which one sustains a pecuniary loss, cannot be regarded as a damage to personal estate. The action is abated at common law, and, not surviving by force of the statute, must be deemed to stand abated."

Upon full consideration of the statutes of Virginia, and of the interpretation placed by the courts of that State upon those statutes, and of every analogy which can be applied from similar provisions elsewhere, we are of the opinion, that in the circuit court this action did not survive the death of the defendant, but abated upon the occurrence of that event; and we order it to be certified accordingly to the circuit court, in reply to the certificate of division.

## *Order.*

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Virginia, and on the point or question on which the judges of the said circuit court were opposed in opinion, and which was certified to this court for its opinion agreeably to the act of congress in such case made and provided, and was argued by counsel. On consideration whereof it is the opinion of this court that this action did not survive against the executor of the defendant, and that it did abate by the defendant's death. Whereupon, it is now here ordered and adjudged by this court that it be so certified to the said circuit court.