# SYSTEM FEDERATION NO. 59 OF RAILWAY EMPLOYEES' DEPARTMENT OF AMERICAN FEDERATION OF LABOR et al. v. LOUISIANA & A. RY. CO.

Civil Action No. 375.

District Court, W. D. Louisiana, Shreveport Division.

Oct. 9, 1944.

Floyd D. Culbertson, of Minden, La., Jones & Jones, of Marshall, Tex., and Byron Bullock, of Shreveport, La., for plaintiffs.

A. L. Burford, of Texarkana, Ark., and T. W. Holloman, of Alexandria, La., for defendant.

PORTERIE, District Judge.

This case in so far as its original complaint be concerned is the same in legal principles as the case of System Federation No. 59, etc., v. Louisiana & A. R. Co., 30 F.Supp. 909, decided by us, followed by us again at 32 F.Supp. 89, by appellate consideration at, 5 Cir., 119 F.2d 509, and with final refusal of writ of certiorari at 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526. There is a different factual set-up.

The instant factual set-up (the factual set-up in the former companion case can be gleaned from the previous district and circuit opinions) is that the complainant through the instrumentality of a Federation of Craft Unions sues the defendant for the enforcement of an award made to her deceased collateral, of whom she is the declared sole heir by proper decree of court declaring one J. J. Kelly (the deceased), a former employee of the defendant, entitled to reinstatement as of the day of his dismissal from employment, March 13, 1932, until the date of his death.

That the former cited case is a companion case to the instant one in the relation previously described is shown by the joint letter of the attorneys for both parties filed with the clerk of this court on December 3, 1940, reading as follows:

"System Federation No. 59 et al. has another suit against the Louisiana & Arkansas Railway Company now pending on appeal in the Fifth Circuit Court of Appeals from your court which involves some of the same questions presented by the pending motion.

"The parties to the above styled cause have therefore agreed that presentation of the motion to dismiss shall be postponed until after said case on appeal has been decided by the Circuit Court of Appeals.

"Will you please present this agreement to the Judge and advise us whether or not this arrangement is agreeable to him?"

The District Court gave its opinion on January 16, 1940, the appellate court gave its opinion on May 2, 1941, and the instant suit was filed on October 29, 1940; so it is evident that the above agreement arose when the decision of the upper courts was awaited.

On November 23, 1940, the plaintiff filed a motion to dismiss, on the ground that the complaint failed to state a claim on which relief could be granted on a number of grounds, the first three of which should be considered by us, as at the end of the litigated case, when the Supreme Court denied the writ, reading as follows:

"(a) The complaint and exhibits made part of same show that Kelly was employed at the time of his discharge, and was working under the contract constituted by the rules of February 9, 1941, while the Award was sought and obtained on an alleged violation of the prior and superseded contract of August 1, 1929.

"(b) The allegations and exhibits show that there was no dispute pending and unadjusted on June 21, 1934.

"(c) The allegations show that Kelly's grievance, if any, was not handled in the usual manner up to and including the chief operating officer."

Therefore, ruling as of the time before the filing of the amended complaint, predicated upon the law of the decided case, which is as applicable in principle to the facts of the instant case as it was applicable to the facts of the original case, repeating all of the reasoning of these former cases, the motion to dismiss must be sustained on these three grounds.

However, on November 16, 1943, after the first case had been definitely decided, an amended complaint was filed by the sister and sole heir at law of J. J. Kelly, reciting the original facts, but premising its complaint no more under the Railway Labor Act, nor on the award made to J. J. Kelly, the dismissed employee, No. 280, Docket No. 291, dated November 21, 1938, but under a new jurisdiction, that of diversity of citizenship and the existence of a federal question in that a part of the action arises under an act of Congress, 45 U.S.C.A. § 151 et seq., and, also, that the amount in controversy is over $3000. Further, now relying altogether on the new contract of February 9, 1931, and not on the old contract of August 1, 1929; showing that Rule 15, Sec. A of the new contract reads as follows: "No employee will be dismissed or suspended without just and sufficient cause. If after proper investigation it is found that a man has been unjustly discharged or suspended he will be reinstated and paid for all time lost"; and that the new rules of February 9, 1931, were in full force and effect; that Kelly's dismissal was wrongful, without just and sufficient cause; that through no fault or lack of effort on Kelly's part he was never during his life reinstated and paid for the time lost, by reason of his wrongful and unjust discharge, complainant emerges practically with a new suit.

It is further alleged in this amended complaint that: Kelly died on or about January 21, 1940, and prior thereto, to-wit, on or about October 20, 1937, the defendant entered into a new working agreement with its various shop crafts, which in part provided that the same should cover all "rules, working conditions, and rates of pay, (that it) covers all understandings now in effect, and supersedes rules posted February 9, 1931 * * *."

In order to give properly the multifarious contentions of the complainant, we should better quote than digest Paragraphs 13, 14 and 15 of the complaint:

"Under the rules of February 9, 1931, and all possible amendments thereto, Kelly, from March 13, 1932, until October 29, 1937, would have held what are commonly called seniority rights of such nature as to have allowed him to work for the defendant over all or the greater part of said period of time at the prevailing rate of pay, being unknown to the plaintiffs, but known to defendant and Kelly's seniority number being such that in due order of seniority he would have worked over such period of time.

"That over all of such period of time Kelly was unable to procure employment, or employment as remunerative as that he would have held with the defendant, but for his wrongful discharge all to his damage as hereinafter set out.

"Mrs. Mary Margerum being in possession of all of effects, rights, benefits and property belonging to Kelly deceased, demands an accounting of the defendant, and judgment against the defendant in the amount due Kelly by reason of the facts above alleged, which she avers will be in excess of $3,000.00, all by reason of the breach of contract alleged above, and she asks general relief."

This is but one angle of the amended complaint; in others of the alternatives it is alleged that if complainant "* * * be mistaken in alleging that the agreement of October 20, 1937, superseded the rules posted February 9, 1931, or for any reason Kelly was entitled to be returned to work with the defendant after October 20th, 1937, and prior to his death, then in that event she shows:

"Under existing and applicable rules and contracts with respect to seniority, the deceased, Kelly, would have been employed at the prevailing rate of pay between October 20th, 1937 and January 21st, 1940, over such a period of time as to have caused him to earn a sum of money in excess of $3,000.00, the exact amount of which is known to the defendant but unknown to the plaintiffs."

We come next to the final alternative. The complainant joins again under a company partnership with the System Federation No. 59 of the Railway Employees' Department of the American Federation of Labor, and alleges that as long past as August 1, 1929, the defendant entered into a written agreement with his employees (Kelly being one); and that the agreement was through the instrumentality of the System Federation No. 59; that Rule 15 A, supra, was contained in the contract at that time, being the identical rule promulgated in the contract of February 9, 1931; that it has been judicially determined through the litigated case, supra, that the whole contract of August 1, 1929, was superseded by the rules of February 9, 1931; that Paragraphs 7 through 15 of the original petition are made a part of this contention by reference; then it is further alleged that Kelly and those seeking to represent him made repeated efforts to procure an investigation of his wrongful discharge and to procure his reinstatement, but the defendant would not, and refused to have any hearing or investigation whatever, and moreover refused to recognize the accredited and authorized labor representative for Kelly; that a "dispute" between Kelly and the defendant, or between the accredited representative of the class of employees to which Kelly belonged, existed and continued to exist until the adjustment made by the National Railroad Adjustment Board; that on or about September 12, 1935, Kelly still seeking to procure an adjustment of his grievances,

sought relief at the hand of the President of the defendant railroad, but his request of such officer was declined by being ignored; that by reason of this sequence of facts, there was a dispute between Kelly and the defendant which was "pending and unadjusted" on June 21, 1934, within the meaning of Section 3(i) of the Railway Labor Act as amended; that on or about April 27, 1938, Kelly and the System Federation No. 59 petitioned the National Railroad Adjustment Board to hear and determine Kelly's case against the defendant under the applicable provisions of the Railway Labor Act, out of which procedure the Board rendered its award No. 280, docket No. 291, previously referred to; and finally we quote Article XXV of the Complaint verbatim:

"In this connection petitioners show that while the dispute was characterized as 'unjust discharge in violation of the agreement dated August 1, 1929', that the defendant carrier in the presentation of its case before the Board specifically contended that the rules of February 9th, 1931 applied, and that its relations with Kelly were governed thereby. The petitioners show that the statement of facts presented and the relief sought by Kelly through his representative was sufficiently broad to allow his reinstatement either under the contract of August 1, 1929, or of the posted rules of February 9, 1931; but that in any event, even if Kelly or his representative was mistaken in alleging the basis of his rights before the National Railroad Adjustment Board, that said Board was within its authority and power in granting the relief to which Kelly was entitled under the facts, irrespective of the specific relief or contentions brought before it by Kelly or his representative."

The prayer follows that an accounting be had and that Kelly have judgment for the amount of damages sustained from March 29, 1932, date of his dismissal, to the date of his death on January 21, 1940, or, alternatively, from the date of his death to October 20, 1937, when he first made a complaint of any kind for having been dismissed; and that award of the Second Division of the National Railroad Adjustment Board as it stands be enforced by judgment; and with statutory attorneys' fees in either alternative.

There is first and separately filed by the defendant at this juncture a formal opposi-

tion to the allowance by the court of the amended complaint, on the grounds that (a) it states new and different facts from those alleged in the original complaint, (b) outlines new causes of action based on new allegations of fact, (c) asserts a new and distinct basis of jurisdiction, (d) seeks to engraft on a Labor Board enforcement suit a common law action for damages and (e) actually changes the whole contractual basis of the original complaint.

Though the above reasons have real substance and weight, in order to dispose, once and for all, of the alleged claim of this former employee of the defendant, we overrule the opposition to the allowance of the amended complaint.

With reservation of its objection to the amended complaint, then, the defendant filed an additional motion to dismiss including (a), (b), and (c), quoted supra, and including (d), (e), and (f) of its first motion to dismiss, and the following new and additional grounds:

"A. It sets up a new cause of action and claim for relief, viz: A breach of a 1931 contract whereas the original complaint was for the breach of a 1929 contract, and a new and distinct claim cannot be engrafted on a pending claim.

"B. Complainants are estopped by the Labor Act from now switching to a common law suit for wages lost and from switching to a contract which was not presented to the Board for an award.

"C. Counts One, Two and Three are prescribed by ten years on their face and Count Three by the two years of Section 153 (q) of the Railway Labor Act.

"D. The allegations do not show a diversity jurisdiction for the damage claims under Counts One and Two, because one of the plaintiffs is an unincorporated association.

"E. The allegation that the collective bargaining agreement of October 20, 1937, covered all understandings left and superseded the 1931 rules, destroys the entire claim for relief ([D.C.]., 32 F.Supp. 89, at [page] 90)."

Our first decision, at this juncture, is to reiterate what we have ruled already, to-wit: (a) The complaint and exhibits made part of same show that Kelly was employed at the time of his discharge, and was working under the contract constituted by the rules of February 9, 1931, while the Award was sought and obtained on an alleged violation of the prior and superseded contract of August 1, 1929; (b) the allegations and exhibits show that there was no dispute pending and unadjusted on June 21, 1934; and (c) the allegations show that Kelly's grievance, if any, was not handled in the usual manner up to and including the chief operating officer. These are declared premises which underlie our consideration of the amended complaint.

As against any and all of the items urged in both the original and the amended complaints, and particularly against the new or additional supposed causes of action that arose in the mind of the complainant following the establishment of the principles of law in the litigated case, there are urged three other reasons in the motion to dismiss on the ground that the complaints, original and amended, fail to state a claim upon which relief can be granted, to-wit:

"(d) The claim and right of action asserted are not heritable.

"(e) The claim and right of action sued on have prescribed.

"(f) The claim and right of action sued on have been lost by laches."

We take first the question as to whether or not the right of action asserted is one wherein the sister of the discharged employee is one that may be inherited by her under the law.

In the case of Gerling v. Baltimore & O. R. Co., 151 U.S. 673, 14 S.Ct. 533, 540, 38 L.Ed. 311, we find:

"These statutes authorize the executor or administrator to prosecute or defend in those cases only in which the cause of action survives by law, and do not undertake to define what those cases are.

"The question whether a particular cause of action is of a kind that survives for or against the personal representative of a deceased person is a question, not of procedure, but of right. As was said by Chief Justice Waite, speaking for this court: 'The personal representatives of a deceased party to a suit cannot prosecute or defend the suit after his death, unless the cause of action, on account of which the suit was brought, is one that survives by law, Rev.Stat. § 955 [28 U.S.C.A. § 778].' 'The right to proceed against the representatives of a deceased person depends, not on forms and modes of proceeding in a suit, but on

the nature of the cause of action for which the suit is brought. If the cause of action survives, the practice, pleadings, and forms and modes of proceeding in the courts of the state may be resorted to in the courts of the United States for the purpose of keeping the suit alive and bringing in the proper parties. [Rev.Stat.] § 914 [28 U.S.C.A. § 724]. But, if the cause of action dies with the person, the suit abates, and cannot be revived. Whether an action survives depends on the substance of the cause of the action, not on the forms of proceeding to enforce it.' Schreiber v. Sharpless, 110 U.S. 76, 80, 3 S.Ct. 423 [28 L.Ed. 65]. In that case, the right in question being of an action for a penalty under a statute of the United States, the question whether it survived was governed by the laws of the United States. But in the case at bar the question whether the administrator has a right of action depends upon the law of West Virginia, where the action was brought and the administrator appointed. Rev.Stat. § 721 [28 U.S.C.A. § 725]; Henshaw v. Miller, 17 How. 212 [15 L.Ed. 222]."

■ The state law controls as to whether or not Kelly's right to enter court under the new jurisdictional status of diversity and amount, or whether or not his right to institute proceedings under the labor laws to have himself reinstated and paid his back salary, continues after his death. It is immaterial as to in just what status his supposed cause of action was, or his supposed right to use the Labor Act to present his claim, and it is likewise immaterial as to where it was being pressed. The materially legal and controlling point is that in either case it had not reached court judgment. He died and there was no pronouncement by court judgment in his favor.

■ The award of the National Railroad Adjustment Board being fundamentally meaningless because of the original case, though attempted to be revived by the third alternative of the amended complaint, is not in such satisfactory judgment form, that under the laws of Louisiana it could pass from Kelly to his sister, his sole heir at law. See Castelluccio v. Cloverland Dairy Products Co., 165 La. 606, 115 So. 796.

■ We hold that the cause of action did not survive Kelly. He did not prosecute any phase of it, either under the Labor Act, nor as a suit in damages, so as to have it transmitted to his heirs. See the following persuasive cases in our Louisiana law: Tete v. Lanaux, Ex'r, 45 La.Ann. 1343, 1347, 14 So. 241; Chivers v. Roger, 50 La.Ann. 57, 23 So. 100; Kerner v. Trans-Mississippi Terminal R. Co., 158 La. 853, 104 So. 740; Reed v. Warren, 172 La. 1082, 1085, 1086, 136 So. 59; Succession of Deshotels, 144 La. 580, 80 So. 883.

The organ of this opinion indicates in the case of Smith v. Texas & N. O. R. Co., at 32 F.Supp. 1013, that Kelly's right of action, if any, could not pass to his sister, for at page 1015 of that case we say:

"The answer as to whether or not plaintiffs are to have a cause or right of action under this general prayer for legal and equitable relief is to be found in the compromise agreement. Assuming, *without deciding,* that Smith's rights have passed to his children, the question is whether or not, under the provisions of the compromise, the rights have been lost through collective bargaining." (Italics ours.)

See, also, Savaria v. United States Railroad Administration, et al., 151 La. 156, 91 So. 661.

So, without going into the complicated maze of multiplied legal questions to arise from the amended complaint of the motion to dismiss, under reasons a, b, and c, we sustain the motion to dismiss on reason d, which, we think, is clear and decisive. In case of a reversal on appeal, we shall then have Items A, B, C, D, and E of the supplemental motion to dismiss, and reason e, prescription, of the original motion to dismiss, to consider and decide.

■ We believe that laches, item (f), because our Civil Code provides the very definitely fixed and classified rules of prescription, does not exist as such in Louisiana.

Judgment will be signed sustaining the motion to dismiss.