**W. Frank LEE, Jr., as Administrator of the Estate of W. Frank Lee, Deceased, and Anne H. Lee, surviving wife, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15512.**

United States Court of Appeals
Fifth Circuit.

Nov. 25, 1955.

Rehearing Denied Feb. 10, 1956.

182

Richard Steele, New York City, for petitioners.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Carolyn R. Just, Atty., R. P. Hertzog, Asst. Chief Counsel, Internal Revenue Service, Rollin H. Transue, Sp. Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from unreported decisions and orders of the Tax Court involves deficiencies in income taxes and fraud penalties [1] determined by the commissioner to be due for the fiscal years ended February 28, 1942 to February 28, 1950, on account of income tax liabilities of W. Frank Lee, who died March 15, 1950. It also involves a penalty for the delinquent filing of taxpayer's return for the fiscal year 1947.

Because the deficiencies were not timely assessed and, but for proof of fraud all of such deficiencies except that for the last year in controversy would have been barred,[2] the respondent had the burden [3] of proving by clear and convincing evidence that the decedent filed false and fraudulent returns.

The Tax Court in its decision expressly declared, "The respondent has the burden of proving by clear and convincing evidence that the decedent filed false and fraudulent returns for all but the last year in controversy", and as expressly found that the respondent had sustained that burden.

Petitioners are here insisting that the record will not support the determination and redetermination that there were deficiencies and if it will, it will certainly not support the finding that any part of them was due to decedent's fraud with intent to evade the tax. In addition to these attacks on the fact findings of the court, petitioners put forward two grounds of attack upon its conclusions of law. One of these is that the net worth theory of reconstruction of income, which was employed by the respondent in making his determinations and in supporting his position below, could not properly be used in this case because the investigation was not commenced and the audit was not made until subsequent to the taxpayer's death, and that this deprived the taxpayer of the prime essential to a fair defense in a net worth theory case, the right and opportunity to explain the evidence put forward by the commissioner in support of it.

1. "§ 293. Additions to the tax in case of deficiency

\* \* \* \* \* \* \*

"(b) Fraud. If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)". 26 U.S.C. 1952 ed., § 293.

2. "§ 275. Period of limitation upon assessment and collection .
"Except as provided in section 276—
"(a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period." 26 U.S. C. 1952 ed. § 275.

"§ 276. Same—Exceptions
"(a) False Return or No Return.—In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U.S.C. 1952 ed. § 276.

3. "§ 1112. Burden of proof in fraud cases
"In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner." 26 U.S.C. 1952 ed. § 1112.

The other is that, since at common law tax penalties did not survive the death of a wrong doer, a fraud penalty may not be assessed against a deceased taxpayer.

The commissioner, on his part insisting that the evidence is not only sufficient to support his contention that there were deficiencies and frauds in the years in question but that the proof almost compelled a finding that this was so, urges that upon the record nothing more than questions of fact are presented by this appeal, and that it cannot be said that the findings were clearly erroneous.

■ Of petitioner's legal positions that the fact of the death of taxpayer before the deficiencies were assessed prevents fraud penalties from being assessed against his estate or the net worth method from being used, the commissioner, citing in support Holland, Friedberg & Smith v. U. S., 348 U.S. 121, 142, and 147, 75 S.Ct. 127, 138, 194, and United States v. Calderon, 348 U.S. 160, 75 S. Ct. 186, points out that, as there held, proof of tax delinquencies by the net worth method is merely to prove a case by circumstantial evidence. So pointing, he insists that the petitioners' contention, that the death of the taxpayer should operate as a bar to proof of a case by circumstantial evidence, is without support in reason or authority. No statute forbidding the use of such evidence is cited, and the consideration put forward by petitioners, that the taxpayer is deprived of an opportunity for explanation, while of course entitled to its due weight with the trier of the facts in determining the probative effect of the circumstantial evidence, can really have no proper bearing upon its admissibility.

■ As to the contention that fraud penalties are in the nature of penal assessments which may not be exacted of a decedent, the commissioner points to cases [4] which have considered the contention and held to the contrary, under the authority of Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, that fraud penalties added under Sec. 293(b) are but civil administrative sanctions of a remedial character in aid of the assessment and collection of taxes, and that they are not to be considered or treated as penal sanctions which die with the offender.

■ We find ourselves in agreement with the commissioner in these contentions. Of the fraud issue, we think it need only be said that the Tax Court, in its unreported opinion, correctly placed the burden on the commissioner, and, marshaling the evidence and making findings in accordance therewith, correctly, we think, determined that that burden was carried. It is settled law [5] that where, as here, there is credible evidence supporting a charge that an understatement of income by taxpayer was due to fraud with intent to evade tax, whether the charge has or has not been proved is a question of fact for the Tax Court to determine, and its finding on this issue, just as on any other issue of fact, is final unless shown to be clearly erroneous.

It will, therefore, serve no useful purpose for us to set out the testimony on which the petitioners on their side and the Tax Court and Commissioner on theirs rely. Neither will it avail anything for us to enter into a discussion of the dangers inhering in the careless and indiscriminate use of the net worth method, nor the obligations imposed upon the commissioner to exercise care and restraint in its use. It is sufficient to say that this court has written many times on the subject of the dangers inherent in the use of the net worth method in criminal cases, and the Supreme

4. Scadron's Estate v. Commissioner, 2 Cir., 212 F.2d 188; Estate of Reimer v. Commissioner, 12 T.C. 913, affirmed 6 Cir., 180 F.2d 159; and Estate of Briden v. Commissioner, 11 T.C. 1095, affirmed in Kirk v. Commissioner, 1 Cir., 179 F.2d 619, 15 A.L.R.2d 1031.

5. Cf. Bryan v. Commissioner, 5 Cir., 209 F.2d 822; Boyett v. Commissioner, 5 Cir., 204 F.2d 205; O'Dwyer v. Commissioner, 5 Cir., 110 F.2d 925.

Court in the Holland case, referring to cases written by us, has written in the same vein. In reviewing convictions in criminal cases by the use of the net worth method where the proof of the guilt must be beyond a reasonable doubt, as well as in civil cases where preponderance will suffice, we have always kept this firmly in mind. However, we and the Supreme Court, as we are both bound to do, have recognized at all times that after all the question for decision in each case is whether the evidence, though circumstantial, constituted sufficient proof to sustain the challenged finding.

Considering the evidence in this case in the light of these principles, though we agree with appellant that the inability of the taxpayer to confute or explain what unconfuted and unexplained has damaging weight, has to that extent increased the factual difficulties of the taxpayer and lessened those of the commissioner, we are bound to hold that this consideration fully expends itself when giving it all the proper weight it is entitled to, we still cannot say, as we cannot here, that on the examination of the evidence as a whole we are left with the firm conviction that the findings were wrong and must be set aside. Leech v. Sanders, 5 Cir., 158 F.2d 486; United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

There remains for determination only the small penalty liability assessed for failure to timely file the 1947 return. While we agree with the taxpayers that there is no affirmative evidence that the delayed filing was deliberate, this will not avail them as a defense as this is not the language of the statute.[6] It, on the contrary, provides that the penalty is to be assessed unless reasonable cause for not filing is shown, and it has been held repeatedly that whether there is reasonable cause for failure to file a timely return is a question of fact in respect to which the burden is on the petitioner and that its solution is peculiarly within the province of the Tax Court. Plunkett v. Commissioner, 1 Cir., 118 F.2d 644; Burford Oil Co. v. Commissioner, 5 Cir., 153 F.2d 745; Commissioner of Internal Revenue v. Lane-Wells Co., 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684; Southeastern Finance Co. v. Commissioner, 5 Cir., 153 F.2d 205.

Nor is there any more merit in taxpayer's contention that the penalty for late filing cannot be imposed upon a deceased taxpayer. The appellant cites no cases so holding and in principle, if, as we have held, fraud penalties may be imposed, this particular penalty may be.

We find no basis for overturning the decisions and judgments of the Tax Court, and they are affirmed.

CAMERON, Circuit Judge (dissenting).

### I.

I am unable to agree with the majority opinion because a review of the entire evidence in this case leaves me with the definite and firm conviction that a mistake has been committed. To begin with, the Tax Court made a mistake of law by admitting, over due objection, proof that the decedent had been adjudged a bankrupt ten years before the beginning point of the net worth computation. Although the Commissioner made no adequate explanation of decedent's finances during that ten year hiatus, the Tax Court evidently laid stress on the fact of the bankruptcy. It was entirely too remote for consideration.

The decedent kept a set of books and the record contains no convincing proof of their inaccuracy. They were of the single-entry type, which the proof showed to be in common use in small businesses such as the decedent had operated. These books were entitled to consider-

6. Sec. 291. "Failure to file return

"(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursu-

ance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: * * *." Title 26 U.S.C.A. § 291.

ation despite the fact that some features were in code,—also a common practice in that territory. Neither the Commissioner nor the Tax Court placed any reliance at all upon them.

The attempted proof of the initial net worth valuation of decedent's property was incomplete, and the government witness who made it so admitted. He was removed from that territory before he completed it, and assumed that his successor would complete it and furnish vital missing data. The Government did not introduce the successor as a witness nor bring in his report.

The accountant for petitioner also constructed net worth statements for the period involved, commencing at the latest date and checking backward. His figures varied quite materially from those developed by the Commissioner and were much more convincing. He demonstrated that the results achieved by the partial investigation of the government agent led to a virtual mathematical impossibility. Since the Tax Court's decision was based largely upon the work of this accountant, with respect to which we are in about as good a position to judge as was the Tax Court, it is our duty to weigh and analyze the figures adduced and, so doing, it is apparent to me that the finding of the Tax Court is clearly erroneous.

## II.

As stated by the majority, most of the Taxes assessed were barred by limitation unless rescued by a showing of fraud. The showing by the Commissioner was, in my view, entirely inadequate. The entire structure of proof was built upon the assumption that the net worth valuation placed by the government agent as of February 28, 1941 was correct. There was little competent proof tending to establish the correctness of this initial computation. It is manifest that the Tax Court presumed it to be correct on the ground that petitioner had not been able to meet the burden of disproving it; and, on that presumption alone and using those figures as a foundation, the Tax Court found that the decedent had grossly understated his taxes for the years in question. Based wholly upon that finding, the Tax Court found fraud. It is not permissible thus to establish a case "by piling one presumption or inference upon another presumption or inference", Standard Accident Ins. Co. v. Nicholas, 5 Cir., 1944, 146 F.2d 376, 378.

Even against the living, fraud cannot be inferred from the mere understatement of income as reflected by this record, but such proof must be buttressed by "direct evidence of 'conduct, the likely effect of which would be to mislead or to conceal' ".[1]

This case reveals a cruelty which ought to be avoided if the ends of justice will permit. Decedent was a leading and respected citizen of a small town in Georgia for all of his life. Subsequent to his death the respondent began an investigation resulting in the assessment of these deficiencies and fraud penalties. Considerably more than half of the estate he left his widow is condemned to the tax gatherer by this decision. More than that, it filches decedent of his good name and "Takes that which not enriches him and makes me poor indeed". The words of Mr. Justice Storey in Prevost v. Gratz, 6 Wheat. 481, 498, 5 L.Ed. 311, rise to condemn what is here done:

> "Fraud, or breach of trust, ought not lightly to be imputed to the living; for the legal presumption is the other way; and as to the dead, who are not here to answer for themselves, it would be the height of injustice and cruelty to disturb

1. Holland v. United States, 348 U.S. 121, 125, 75 S.Ct. 127, 130, quoting from Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418. Although this and others cited were criminal cases, the underlying principles enunciated apply to all cases, and especially so where fraud is charged. In the Holland case, the court further stated, 348 U.S. at pages 137–138, 75 S.Ct. at page 136: "Increases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income." There was no proof here of any source of income except decedent's business.

their ashes, and violate the sanctity of the grave, unless the evidence of fraud be clear, beyond a reasonable doubt." ·

### III.

It is said that the net worth method of computing income taxes is nothing more than the use of circumstantial evidence. But, as pointed out by the majority opinion, both this Court and the Supreme Court have recognized that its application must be held within fair and sensible limitations. "We concluded that the method involved something more than the ordinary use of circumstantial evidence * * *,"—so said the Supreme Court in the Holland case, supra, 348 U.S. at page 124, 75 S.Ct. at page 130. Moreover, it continued, 348 U.S. at page 129, 75 S.Ct. at page 132:

"While we cannot say that these pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint. The complexity of the problem is such that it cannot be met merely by the application of general rules. * * * Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute. * * * Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation." [2]

That opinion further states that it is an essential condition in such a case that the Government establish "with reasonable certainty * * * an opening net worth". 348 U.S. at page 132, 75 S.Ct. at page 134. We have used similar and not less poignant words of warning our-

selves with respect to the nature and limits of this method of developing a case against a taxpayer. Cf. Bryan v. United States, 5 Cir., 1949, 175 F.2d 223, 227, affirmed 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335; and Demetree v. United States, 5 Cir., 1953, 207 F.2d 892.

Also, in Holland v. United States, supra, 348 U.S. at page 126, 75 S.Ct. at page 130, the Supreme Court made this significant statement: "One basic assumption in establishing guilt by this method is that most assets derive from a taxable source, and that when this is not true the *taxpayer is in a position to explain the discrepancy*". (Emphasis supplied.) This one sentence indicates clearly that the cautious approval given the net worth method is based primarily upon the assumption that a living taxpayer, with his intimate knowledge of all the facts, can and will destroy a man of straw constructed by the Commissioner. It follows that the device has no place in the Government's dealings with the estates of its citizens after they are dead and unable to protect themselves. Doubtless if this decedent had been alive and able, by his oral testimony, to apply the key to the code [3] and supplement the set of books which was manifestly sufficient for his own needs, this injustice would have been averted.

It is fundamental in the Anglo-Saxon scheme of justice, recognized at common law and by statutes in practically all the states, that those who are not able to speak for themselves shall be accorded protection by the sealing of the lips of their adversaries as to transactions between them. We ought to apply such a principle of rudimentary justice here. We ought to avoid giving color to the thesis that the exigencies of the exchequer are such that those employed to keep it replenished may deal with taxpayers in any spirit not dominated by

2. The Supreme Court said in that case also, 348 U.S. at pages 126–127, 75 S. Ct. at page 131: "The net worth method, it seems, has evolved from the final volley to the first shot in the Government's battle for revenue, and its use in the ordinary income-bracket cases greatly increases the chances for error." In this case it constituted all the shots in between, also.

3. The use of the code dated back to 1906, long before the first income tax law.

absolute fairness, tinctured even by a touch of chivalry and magnanimity.

For these reasons, I would reverse the decision of the Tax Court.