T.C. Memo. 1996-369

UNITED STATES TAX COURT

DEBORAH JOYCE WINDISCH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2308-94.                    Filed August 12, 1996.

Deborah Joyce Windisch, pro se.

Stephen R. Asmussen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, Judge:  Respondent determined deficiencies in,
additions to, and penalties on petitioner's Federal income taxes
as follows:

| Year | Deficiency | Additions to Tax and Penalties | |
| | | Sec. 6651(a)(1) | Sec. 6662(a) |
| --- | --- | --- | --- |
| 1990 | $2,906 | $164 | $581 |

| 1991 | 4,908 | 1,049 | 982 |
| 1992 | 4,646 | -- | 929 |

Unless otherwise noted, all section references are to the Internal Revenue Code (Code) as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the following issues remain for decision: (1) Whether petitioner's photography activity constituted an activity not engaged in for profit within the meaning of section 183 during the years in issue; (2) whether petitioner is liable for the addition to tax for failure to file timely her 1990 and 1991 Federal income tax returns; and (3) whether petitioner is liable for the accuracy-related penalty provided by section 6662(a) for the years in issue.

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated for trial pursuant to Rule 91.[1] The stipulations of fact are incorporated herein by reference and are found accordingly.

At the time the petition in the instant case was filed, petitioner resided in Soquel, California.

During the years in issue, petitioner was employed full time as an account clerk by the Santa Cruz Health Services Agency in

---

[1] Respondent objected to admission of certain exhibits pertaining to years subsequent to the years in issue on grounds of materiality and relevance. We sustain respondent's objection. Fed. R. Evid. 401. We note, however, that our decision in the instant case would not be affected by admission of the exhibits to which respondent has objected.

Watsonville, California.  Petitioner's previous jobs also involved accounting work.  Also during the years in issue, petitioner held a part-time position as a telephone bill collector with the Credit Bureau of Santa Cruz County, working as few as 12 hours to as many as 17 hours per week.  Petitioner worked at her part-time job from 5:30 p.m. until as late as 10 p.m. Monday through Thursday and from 9:30 a.m. until as late as 4 p.m. Saturday.

Petitioner was involved in photography prior to the years in issue.  Members of her family had worked in the photography field as well.  Petitioner photographed, inter alia, weddings, family reunions, and graduations.  Petitioner also made portraits and photographed rock bands and musicians.  She did not charge for her photography work until 1987 and, until then, did not treat the activity as a business for tax purposes.  Beginning with her 1987 Federal income tax return, she included the activity on Schedule C of her returns, claiming losses for each of the taxable years 1987, 1988, and 1989.

Petitioner did not maintain a dark room and sent her film to a processing lab for developing.  Petitioner did not have formal training in photography during the years in issue.  Petitioner, however, had the quality of her photographs analyzed and critiqued.  During 1991, petitioner joined the Professional Photographers of California and the Professional Photographers of the Monterey Bay Area (PPMBA), which held monthly meetings at

which other photographers would lecture on technical and business matters connected with photography. Petitioner learned certain things about pricing her work at these meetings. If, however, petitioner was aware that a customer was suffering financial hardship, she attempted to accommodate the customer and did not charge her standard price. Furthermore, if a wedding couple did not have the funds to purchase petitioner's photographs, she allowed them to acquire the photographs up to a year after the ceremony, after their other bills had been paid. Petitioner could not afford to, and did not, advertise in the Yellow Pages during the years in issue. Instead, petitioner relied on flyers and word-of-mouth to promote her activity. Petitioner also placed an advertisement in a softball team's program. Most of petitioner's customers during the years in issue were her coworkers at the Santa Cruz Health Services Agency. Petitioner would meet with coworkers during breaks, or at lunch or dinner time at restaurants near the agency's offices, and she claimed tax deductions for the cost of the meals. Additionally, petitioner met people at her home and deducted the cost of groceries.

Petitioner's parents and brother resided in Los Angeles, California. During 1991, petitioner arranged to photograph the wedding of certain of her friends in Los Angeles, which was 340 miles from her home in Soquel. In connection with that engagement, petitioner made five trips to Los Angeles to: (1)

Make arrangements for photographing the event, (2) do the photography, (3) deliver prints and reprints of the wedding photographs, and (4) review reprint orders. At least four of those trips lasted several days each. During certain of those trips, petitioner also photographed or delivered prints of her brother's wedding. Petitioner purchased a gift, a card, and ribbon for her friends' wedding. Petitioner received approximately $843 in connection with photographing her friends' wedding, from which petitioner paid the cost of film and developing, which was at least $568. Petitioner also attributed her cost of meals in restaurants, including a meal she purchased for her friends, to that job.

During 1992, petitioner was paid $50 to assist another photographer in taking pictures at a party. Petitioner attributed a grocery store bill of $54.19 and the cost of meals at restaurants to the job. Also during that year, petitioner photographed a family reunion. Petitioner paid the cost of developing the photographs and of renting equipment and attributed the cost of meals in restaurants, including meals with the person from whom she rented equipment and the persons ordering the photographs, to the job.

On her 1990 Federal income tax return, petitioner reported wage income of $27,569, interest income of $92, and dividend income of $2. Petitioner claimed itemized deductions of $5,325. On Schedule C of the return, petitioner reported gross receipts

of $1,141 (rounded), consisting of: (1) $454.75 received for accounting services, (2) $65.15 in commissions, (3) $165.74 received for miscellaneous services, (4) $76 received for merchandise orders, and (5) $380.60 received for photography. On the Schedule C, petitioner claimed a cost of goods sold of $301 and business expenses of $20,122, resulting in a net loss of $19,282. Petitioner reported a tax due for 1990 in the amount of $47. Petitioner's 1990 Federal income tax return was filed on May 28, 1991.

On her 1991 Federal income tax return, petitioner reported wage income of $31,567, interest income of $47, and refunds of State and local taxes of $393. Petitioner claimed itemized deductions of $5,285 and an IRA deduction of $1,200. On Schedule C of the return, petitioner claimed gross receipts and gross income of $3,007, at least $19.50 of which was received for accounting services, at least $50 of which was received as rent, and at least $2,423.07 of which was received for photography. On the Schedule C, petitioner claimed business expenses of $19,230, resulting in a net loss of $16,223. Petitioner reported a tax due for 1991 in the amount of $1,069. Petitioner's 1991 Federal income tax return was filed on December 15, 1992.

On her 1992 Federal income tax return, petitioner reported wage income of $32,345 and interest income of $29. Petitioner also reported itemized deductions of $6,343 and an IRA deduction of $1,200. On Schedule C of the return, petitioner reported

gross receipts and gross income of $3,015, consisting of $1,304 received for the rental of space in her home and $1,711 received for photography. On the Schedule C, petitioner reported business expenses of $17,636, resulting in a net loss of $14,621. Petitioner reported a tax due for 1992 in the amount of $1,189. Petitioner's 1992 Federal income tax return was filed on April 12, 1993.

For the years in issue, petitioner deducted a variety of expenses on the grounds that they were connected to her photography activity. Petitioner deducted the cost of repairing earthquake damage to her home and the cost of removing some infested trees from her yard. Petitioner deducted as "educational supplies" her purchases of recordings of the music of certain of the bands she had photographed. Petitioner deducted the full cost of her 1992 membership in the California State Automobile Association, even though she had only one car and did not use it exclusively for business purposes. Petitioner deducted the cost of taking her cousin and the cousin's husband to Disneyland. Petitioner deducted the cost of a watchband.

During the years in issue, petitioner paid $50 per month to each of Temple Trust and United Sovereigns and deducted those amounts. Temple Trust provided record-keeping advice to small businesses. United Sovereigns was a marketing organization from which members, including petitioner, received commissions for enrolling new members. It provided members with a newsletter on

money and tax matters, an income tax preparation service, representation during audits of their returns, and estate planning assistance. Petitioner does not know who owns United Sovereigns.

During relevant years, United Sovereigns provided petitioner with a workbook that she filled out and returned to the organization and which United Sovereigns in turn forwarded to a return preparer to be used in filling out petitioner's income tax returns. Other than filling out the workbook, petitioner did not perform any of the computations required to complete her returns. United Sovereigns sent petitioner's workbooks to Bill Webber, who prepared petitioner's Federal income tax returns for the years in issue. Mr. Webber also represented petitioner during the audit of her returns. Mr. Webber does not contact the taxpayers whose workbooks are sent to him prior to preparing their returns, and he accepts the information set forth in those workbooks.

Petitioner did not investigate the qualifications of any of the persons owning and operating United Sovereigns prior to enlisting them to prepare her tax returns, nor was she aware of Bill Webber's credentials, although she had met him.

OPINION

## Petitioner's Photography Activity

We first consider whether petitioner's photography activity was engaged in for profit within the meaning of section 183. The general rule of section 183(a) disallows deductions attributable

to an activity not engaged in for profit. Section 183(b) provides two exceptions to the general rule. The first, provided by section 183(b)(1), permits deductions that otherwise would be allowable without regard to whether the activity is engaged in for profit; the second, provided by section 183(b)(2), permits deductions that would be allowable if the activity were engaged in for profit to the extent that the gross income from the activity exceeds the deductions allowable pursuant to section 183(b)(1). Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Petitioner bears the burden of establishing that her photography activity was engaged in for profit. Rule 142(a).

In order to carry that burden, a taxpayer must show that he or she had an actual and honest objective of making a profit from the activity. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation, however, need not be a reasonable one. Id. at 644-645; Golanty v. Commissioner, 72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. The question whether the requisite intention is present is one of fact and is to be resolved based on consideration of all relevant circumstances, with greater weight being given to objective factors than to mere

statements of intent. Dreicer v. Commissioner, supra at 645; Golanty v. Commissioner, supra at 426; sec. 1.183-2(a) and (b), Income Tax Regs. Section 1.183-2(b), Income Tax Regs., sets forth the following nonexclusive list of relevant factors to be considered: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is conclusive. Golanty v. Commissioner, supra at 426; sec. 1.183-2(b), Income Tax Regs.

Based on our consideration of the record in the instant case, we conclude that petitioner has not demonstrated that her photography activity was carried on with the actual and honest objective of making a profit. Although the activity had some of the trappings of a business, those "trappings" are insufficient to demonstrate that the activity was carried on for profit. Although petitioner maintained meticulous records, and respondent has conceded that all of the items of expense noted in her summaries have been substantiated, such records may represent

nothing more than a conscious attention to detail. Golanty v. Commissioner, supra at 430. Petitioner had extensive experience with accounting work, and it is natural to expect that she would apply that experience to her photography activity. Moreover, it does not seem that the records were kept for the purpose of cutting expenses, realizing profits, or evaluating the overall performance of the operation.

Rather, it appears that the principal purpose of petitioner's records was to substantiate claimed deductions from income for tax purposes. Analysis of petitioner's records reveals that her activity was operated with little or no regard for the level of expense incurred in relation to the small amount of income yielded by the activity. Petitioner frequently incurred costs for restaurant meals and groceries in connection with her photography activity, explaining that she and the people she met had to eat anyway, and so would meet over a meal to discuss photography. We note that many of petitioner's clients during the years in issue were coworkers, friends, and family, and petitioner has not convinced us that many of the meals did not have significant personal or social aspects for her. Indeed, the meetings and other contacts with persons in connection with her photography activity recorded by petitioner largely appear consistent with ordinary social activities.

Petitioner has not established that she did not use her photography activity as a means of deducting personal expenses

and the cost of social activities. For instance, in 1991 petitioner photographed the wedding of certain friends in Los Angeles, making five trips from her home in Soquel, 340 miles away. On at least four of the trips, petitioner stayed in Los Angeles several days, apparently with her parents, who resided in Los Angeles. One of the trips was made so that petitioner could personally deliver, as opposed to mailing, developed photographs of the wedding.[2] Petitioner also admits that she deducted the cost of the gift, card, and ribbon purchased for the wedding couple, and deducted her cost of a meal attended by the couple, her father, mother, brother, and brother's fiancee. Petitioner has not suggested that she would not have attended the wedding if she had not been engaged to photograph it.

On another occasion, petitioner also received $50 for photographic work, yet admits that she deducted a $54.19 grocery bill that she claimed related to the work. Petitioner also admits that she deducted the cost of: (1) Groceries, (2) a watchband, (3) removing infested trees from her yard, (4) recordings of bands that she photographed, and (5) an automobile club membership. Petitioner also admits she deducted the cost of a trip to Disneyland with her cousin and cousin's husband, and the cost of tickets to a concert she attended with her cousin and persons described as "clients". Although petitioner claims that

---

[2]     Petitioner testified that she had agreed to personally deliver the photographs, instead of mailing them.

there was a business purpose for the foregoing expenditures, she has not shown that they did not have significant personal aspects as well.

Other circumstances also suggest that petitioner's photography activity was not operated in a businesslike manner. It does not appear that petitioner made any significant changes in the manner in which she operated her activity, such as reducing expenses, in an effort to achieve profitability during the years in issue. Those circumstances, as well as others in the record, such as the fact that petitioner generally did photography for coworkers, friends, and relatives, indicate to us that personal, rather than business, considerations influenced the manner in which petitioner conducted her photography activity.

Although petitioner claims that she learned about pricing her services as a photographer from attending lectures given at meetings of the PPMBA, and changed her practices as a result, it does not appear that the change caused any significant improvement in the financial results of the activity. Moreover, although petitioner claimed to have a mentor, that person's advice appeared to concern the technical quality of her photography rather than the business aspects of the activity. We are not persuaded that petitioner made any concerted effort to obtain advice as to how to make her photography activity profitable.

Petitioner also had limited time to devote to her photography activity, inasmuch as she was employed full time as an account clerk and worked as few as 12 hours to as many as 17 hours per week, from Monday through Thursday during the evening and during the day on Saturday, as a telephone bill collector. Although petitioner claimed to devote to photography much of the time that was not occupied by her jobs, we are not convinced that petitioner's motivation was not primarily social and recreational in taking meals with coworkers, friends, and relatives, and in associating with the rock bands and musicians she photographed during the time she pursued her photography activity. Petitioner also has not shown that any of the assets used in her photography activity, or the photographs that she took, would appreciate in value, or that she was successful in carrying on similar or dissimilar activities.

Petitioner has consistently incurred losses in her photography activity from 1987, the first year she treated it as a business for tax purposes, through 1992, the last year in issue, and has never reported a profit from the activity. For each year in issue, petitioner reported a substantial loss that was apparently attributable to her photography activity.[3] For 1990, petitioner received approximately $380 from her photography

---

[3] Petitioner has not attempted to show whether any of the expenses claimed on the Schedules C related to the income reported on those schedules that was realized from her activities besides photography.

activity, but claimed expenses of $20,122. For 1991, the parties agree that petitioner received approximately $2,864 from her photography activity, but claimed expenses of $19,230. For 1992, petitioner received approximately $1,711 from her photography activity, but claimed expenses of $17,636.

While losses incurred during the early stage of an activity might not necessarily indicate that the activity is not engaged in for profit, continued losses after the period customarily required to bring an operation to profitability, if not explainable by ordinary business reverses, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. Petitioner has not attempted to establish the period customarily required to bring a photography business to profitability, nor has she offered adequate reasons for the substantial continuing losses experienced by her photography activity. Given the circumstances of the instant case, petitioner's claimed losses indicate that the photography activity was not engaged in for profit. Considering petitioner's financial status, it appears to us that the income derived from petitioner's other employment enabled her to continue to engage in her photography activity in the manner in which she conducted it, indicating that the photography activity was not engaged in for profit. Engdahl v. Commissioner, 72 T.C. 659, 670 (1979). Petitioner's losses offset in large part the income she derived from other sources.

We are not persuaded that substantial elements of personal pleasure and recreation were not present in petitioner's photography activity. Petitioner had been involved in photography prior to claiming the activity was a business. She stated in her opening statement at trial that "photography is as much a part of me as my eyes, my hands, and my heart". She further testified that almost everything she does is related to photography. At trial, petitioner indicated that she had photographed musicians and their performances most of her life, that she had had contact with persons in the music industry for a long period of time, and that she had purchased recordings by the bands that she photographed. Petitioner appears to have derived personal pleasure from the contact with the music industry afforded by her photography activity. We also think it reasonable to infer that petitioner derived personal satisfaction from photographing her coworkers, friends, and family at their weddings, graduations, and other events and that the activity facilitated petitioner's social activities. While there is no requirement that profit-oriented work be onerous and unpleasant, Elliott v. Commissioner, 90 T.C. 960, 973 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990), an activity carried on because of the personal satisfaction it affords, regardless of whether it is profitable, constitutes a hobby and is treated as such for tax purposes, Bowles v. Commissioner, T.C. Memo. 1993-222.

Based on the record in the instant case, we hold that, during the years in issue, petitioner has not met her burden of proving that her photography activity was not an activity not engaged in for profit within the meaning of section 183(c). Consequently, the deductions claimed with respect to it are allowable only as provided by section 183(b). Based on the record, we are satisfied that petitioner has established that she incurred expenses deductible pursuant to section 183(b) in amounts at least equal to the amounts of gross income realized from her photography activity.[4]

## Section 6651(a) Addition to Tax

Respondent determined that petitioner was liable for the addition to tax provided by section 6651(a) for 1990 and 1991. Where a taxpayer fails to file an income tax return on the date prescribed for filing, section 6651(a)(1) imposes an addition to tax equal to 5 percent of the amount required to be shown on the return, with an additional 5 percent to be added for each additional month or partial month during which the failure continues, not exceeding 25 percent in the aggregate. The addition to tax does not apply where the taxpayer demonstrates

---

[4]    We note that petitioner has not established the amount of any cost of goods sold or deductible expenses attributable to the other activities the income from which is reported on her Schedules C for the years in issue.

that the failure to file timely was due to reasonable cause and not willful neglect.  Sec. 6651(a)(1).  Reasonable cause exists where the taxpayer was unable to file timely despite the exercise of ordinary business care and prudence.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  "Willful neglect" has been defined as a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).  The question whether a failure to file timely is due to reasonable cause and not willful neglect is one of fact, on which petitioner bears the burden of proof.  Rule 142(a); Lee v. Commissioner, 227 F.2d 181, 184 (5th Cir. 1955), affg. a Memorandum Opinion of this Court dated July 31, 1953.

The parties stipulated that petitioner's 1990 Federal income tax return was filed on May 28, 1991.  Petitioner alleges on brief that she filed a Form 4868 requesting an extension of time to file that return.  Statements in briefs, however, are not evidence, Rule 143(b), and there is no such request attached to the copy of petitioner's return that is in the record, nor is such a request otherwise in evidence.  We conclude that petitioner's 1990 Federal income tax return was due on April 15, 1991.  Sec. 6072(a).  The parties have stipulated that petitioner's 1991 Federal income tax return was filed on December 15, 1992.  That return was due on April 15, 1992.  Sec. 6072(a).  Petitioner concedes that her 1991 return was not filed timely.

Except as noted above, petitioner does not attempt to explain the reason for the failures to file timely. Petitioner on brief states that she was not asked to give an explanation; however, petitioner bears the burden of proving reasonable cause for her failure to file timely, and it is her responsibility to present any explanation she may have for her conduct. We accordingly sustain respondent's determinations pursuant to section 6651(a) for 1990 and 1991.

Section 6662(a) Penalty

Respondent determined that petitioner was liable for the accuracy-related penalty provided by section 6662(a) for each year in issue. Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax that is attributable to, inter alia, negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including failure to exercise due care or failure to do what a reasonable person would do in the circumstances. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard of the Code or the temporary or final regulations issued pursuant to the Code. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalty does not apply to any portion of an underpayment with respect to which it is shown that there was a reasonable cause and that the taxpayer acted in good faith.

Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id. A taxpayer must establish error in the determination that he or she is liable for the penalty provided by section 6662(a). Rule 142(a); Estate of Monroe v. Commissioner, 104 T.C. 352, 366 (1995).

On brief, petitioner contends that she believed in good faith that the expenses that she claimed were allowable. Good faith on the part of a taxpayer, however, does not always negate negligence. Taxpayers are required to take reasonable steps to determine the law and to comply with it. Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992). In the instant case, petitioner has not shown that her claimed deductions for expenses were made with any significant regard to whether they were personal in nature, and the record supports the inference that petitioner's photography activity was used to deduct personal expenses. We do not consider petitioner to have acted reasonably with respect to the deduction of those expenses claimed for her photography activity. Moreover, petitioner failed to investigate the qualifications of any of the persons owning or operating United Sovereigns or of Mr. Webber before enlisting them to prepare her tax returns for the years in issue. Based on our

consideration of the entire record, we sustain respondent's determinations with respect to the accuracy-related penalty for negligence for the years in issue.

To reflect the foregoing and concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>